### H. W. Brown and Emory Myers v. Ohio Oil Co. et al.

1. CONSIDERATION IN GAS AND OIL LEASE.

   The consideration of one dollar in an oil and gas lease is sufficient to sustain the grant of the privilege to the lessee of entering on the leased land for a specified period, to drill for oil and gas.

2. MUTUALITY IN GAS AND OIL LEASE.

   That in such lease the lessee did not expressly promise on his part to fulfil the terms of the contract of lease, will not avoid the lease for want of mutuality, as, if within the specied term, the lessee entered upon the lands and exercised the privileges granted and found oil or gas in paying quantities, the law will infer a promise on his part to fulfil the terms of the lease.

3. SAME—CLAUSE MODIFYING HABENDUM CLAUSE.

   A provision in an oil and gas lease for the term of two years, and as long thereafter as oil or gas is found in paying quantities, not exceeding in the whole term twenty-five years, that "in case no well shall be drilled on said premises within two years from the date hereof, this lease shall become null and void unless the lessee shall pay for the further delay at the rate of one dollar per acre at or before the end of each year thereafter, until a well shall be drilled," is not void as being inconsistant with the *habendum* clause, or as being against public policy, and confers upon the lessee the right to keep the lease alive as against the lessor for a reasonable time after the expiration of the specified time of two years, by tendering the specified yearly rental.

4. SAME—EXTENSION OF TIME A NEW CONTRACT—RECORDING.

   Under such lease the payment at the end of two years of the additional sum per acre and the obtaining of further time to drill for oil and gas, would constitute a new contract or license, which would be void as against a subsequent lessee without actual notice, unless recorded, or unless the first lessee was in actual possession of the land leased.

APPEAL.

LAUBIE, J.

This case involves a dispute in regard to the validity of certain leases of oil and gas territory in this county.

A petition for an injunction and to remove a cloud upon their title, was filed by the plaintiffs against the defendants, February 15, 1899.

The lease under which the plaintiffs claim was one from Daniel Minard to one Snyder, dated November 12, 1896, and embraces the privilege of developing for oil and gas, the premises in question, comprising one hundred acres. This, through intermediate assignments from Snyder, reached the hands of the plaintiffs, who bring the action.

The petition alleges that no well was drilled upon the said premises within two years from the date of the lease, but that the lessee and his assignees elected to pay the rental provided for in the lease for further delay, and tendered the same to the lessor, and thus they kept their lease alive.

The defendant, The Ohio Oil Co., Daniel Minard having died in the meanwhile, early in February, 1899, and soon after the expiration of the two years referred to in the petition of the plaintiffs in which no well was drilled on the premises by them, obtained a lease from the widow who had a life estate in the premises, and all the heirs, perhaps, but two,

Brown and Myers v. Oil Co.

and notified the plaintiffs that they should not enter upon the premises for any purpose whatever, as it had obtained a lease of the land and was in possession; and the defendants claim that the lease of the plaintiffs became and was void and of no effect, by reason of the facts hereafter stated; and the oil company filed a cross-petition in which it asks for an injunction against the plaintiffs, and removal of their lease as a cloud upon its title.

The principal and controlling question, therefore, in the case is whether the lease which the plaintiffs hold, is or was a valid and subsisting lease upon the land after the expiration of two years from its date.

The *habendum* clause in the lease is in these words: "To have and to hold the same unto the lessee, his heirs and assigns, for the term of two years from the date hereof, and as long thereafter as oil or gas is found in paying quantities thereon, not exceeding in the whole the term of twenty-five years from the date hereof."

And there is a further provision in a subsequent part of the lease, which reads: "In case no well shall be drilled on said premises within two years from the date hereof, this lease shall become null and void, unless the lessee shall pay for the further delay at the rate of one dollar per acre at or before the end of each year thereafter, until a well shall be drilled."

It is under this provision of the lease that the plaintiffs claim that their lease is still a valid and subsisting lease, for the reason that they tendered the rental for a year to the owners before the expiration of the two years, and although no well was drilled upon the premises in the two years, that by virtue of this provision and the tender of the rental therein provided for, it extended their lease and kept it alive as a valid and subsisting lease.

On the other hand, it is claimed by the defendants that such is not the effect of what the plaintiffs did, and further that the lease itself was, in fact, void for want of mutuality; and that this special provision of the lease is inconsistent with the *habendum* clause, is against public policy, and has no force or effect.

As to the contention of the defendants, that there was no mutuality in this lease, as there was no promise upon the part of the lessee to do any hing, that is not well taken in our opinion. The specified term in the lease is for two years and the lease conferred upon the lessees the right or privilege of entering upon the lands to drill for oil or gas to ascertain whether or not the land contained oil or gas in paying quantities, and for that privilege the contract specified he was to pay the sum of one dollar, the receipt of which is in the contract of lease acknowledged by the lessor.

It is entirely immaterial, as no fraud or mistake is alleged what the extent of that consideration is, as it is a valuable one. In this instance one dollar was a sufficient consideration to secure such privilege to the lessee, for the specified period; and if within the period specified, the lessee entered upon the lands and exercised the privileges granted, and found oil or gas in paying quantities, then he would be bound to fulfill all the terms of the contract of lease, notwithstanding he did not expressly promise that he would do so. The object of the parties being evidently to obtain the oil and gas for their mutual benefit, the law, under such circumstances, would infer a promise and obligation on the part of the lessee to carry on the project as contemplated in the lease, which could be enforced against him.

So far as the qualification, if it may be so called, of the *habendum* clause, is concerned, we again are not able to agree with the contention of counsel that that is a void provision and can have no force or effect. I refer, of course, to the provision that "in case no well shall be drilled on said premises within two years from the date hereof, this lease shall become null and void; unless the lessee shall pay for the further delay at the rate of one dollar per acre at or before the end of each year thereafter, until a well shall be drilled."

This provision would not extend the rights and privileges specified to the lessee for the full period of twenty-five years. It could not have that effect, but it must be given some effect in the consideration of this lease or contract. It cannot be rejected *in toto* for inconsistency because it qualifies or modifies the *habendum* clause, or gives the full period of the specified term for the drilling of the well.

We are to look to the language used by the parties to see what they did intend by their contract, There is no rule of law that I know of that prevents the parties from contracting as they see fit. They may make such provisions in their contract, whether as to land or what not, as they see proper if they are not in conflict with any known law, or with public policy, On this last point counsel claim that in the state of Pennsylvania at least, it has been declared in regard to such provisions that they are void because they are against public policy. We have not taken the trouble to investigate this, because we could not agree with any such decision, and it is useless to look it up.

A man who owns a farm has a right to contract for its sale, or the sale of any part of it as he pleases. If he does not want the oil and gas developed under it for twenty-five years, it is his right and privilege, and neither man, government nor courts can interfere with that right or privilege of ownership, so that this provision must have some effect.

We need not here determine the full extent of the rights of parties under that provision. It is unnecessary for us to decide that question, or to determine how many years such privileges might be extended by the payment of such rental. It is sufficient for us to hold that this provision has some force and effect; that it conferred upon the lessee the right to keep the lease alive as against the lessor, for a reasonable time at least, after the expiration of the specified term of two years by tendering the specified yearly rental.

In this respect the lease is different from the one considered in Northwestern Ohio Natural Gas Co. v. Tiffin, 59 Ohio St., 420, and must receive a different construction from that put upon that lease. In that case the court well held that the right to extend the time for the completion of the well by the payment of the yearly rental was confined to the specified term, because the specified term was five years, while the time for completion of the test well was but nine months. But here, the time for the completion of the well is just the same as the specified term, to-wit, two years; and the provision in question could have no effect or meaning if confined to the period of the specified term.

Under this lease no operations towards drilling a well were begun within the two years, the specified term in the lease, and no possession was taken of the land; nor was this suit brought until after the two years had expired, and not until the lease was made to, and the possession of the land taken by, the defendant, the oil company; so that, while plaintiffs had tendered to the owners the first year's rental spoken of as payment for further delay, and upon its refusal had deposited it in bank,

the bank specified in the contract of lease, for and to the credit of the owners, they had taken no possession of the lands. The lease itself and the assignment had been recorded, but that was all. No entry was made on the record of this tender, and no question of the effect of such entry is made.

Now, the question here is not between the lessor and the plaintiffs holding the lease, but it is between the plaintiffs and a subsequent lessee of the same lands, for the same purpose, and that subsequent lessee as disclosed by the evidence, and as I have said already, had taken and was holding possession of the premises at the time this suit was commenced and before any attempt to take possession had been made by the plaintiffs, and the lease to the defendant oil company had been recorded, in pursuance of the statute. Under this state of facts, as between these lessees all rights under the lease to the plaintiffs ceased and terminated.

The lessee had paid a consideration for the privileges specified for the term of two years, but no longer, and all rights under the lease then ceased unless some new contract was made and recorded as provided in Sec. 4112a, Rev. Stat. That section provides: "That all leases and licenses, and assignments thereof or of any interest therein" of the kind involved herein, shall be recorded in the lease record in the office of the recorder of the proper county, and "no such lease or license hereafter executed or given, unless the person claiming thereunder is in actual and open possession, shall have any force or validity until the same is filed for record as aforesaid, except as between the parties thereto."

The lease, as we have seen, provided how a new contract might have been made. It gave the lessee the option of making a new contract upon a new and an increased consideration, but to obtain this new right or license, the lessee must have elected to avail himself of that provision of the lease, and pay or tender the increased or new consideration for the further time to the lessor. As between the lessor and lessee, if this were done, that would be sufficient, and would make it a binding and valid lease for such a period as they might agree upon, or the rental might be accepted for, or for such a period as a court might hold was reasonable in view of the object and intention of the parties in making the lease. But this was not sufficient under our law to make it a valid and subsisting lease as against a subsequent lessee. As to such person, the extension must be in writing and recorded, or the lessee must be in actual and open possession of the land.

Now, there is no claim that either of these things were done by the lessees; that is, they neither had a new arrangement reduced to writing and recorded, nor were they at any time in actual and open possession of the land.

The Northwestern Ohio Nat. Gas Co. v. Tiffin, *supra*, disposes of the case upon this proposition upon principle.

The lease in that case provided in the *habendum* clause: "The party of the second part, his heirs or assigns, to have and to hold the said premises for and during the term of five years from the date hereof, and as much longer as oil and gas is produced or found in paying quantities thereon ;" and the lease subsequently provided that "It is further agreed that the party of the second part shall complete a well on the above described premises within nine months from the date hereof, and in case of failure to complete such well within such time, said party of the second part agrees to pay to the said party of the first part for such delay, a yearly rental of 50 cents per acre on the premises herein leased

from the time of completing such well as above specified until such well shall be completed."

There was no well drilled within the time, and it ran along, the lease having been assigned to the plaintiff, and to the lessor the assignee paid an increased consideration for further delay; instead of 50 cents an acre, $1.50 an acre was agreed upon, and was paid.

The court held that this provision for further extension of the lease was valid for the period of five years, the specified term, and that the lessees could, by paying the rental therein provided for, extend the time to complete the well from the period of nine months to five years, from year to year, but that it was of no avail thereafter as against third persons unless some new contract was entered into, and recorded, or actual possession taken of the land.

Williams, J., delivering the opinion, upon page 443, says: " There having been no possession taken under the lease, nor effort made to develop its producing qualities as contemplated within the required time, an examination of the record, while it would have discovered the existence of the lease, would also have disclosed that it had expired and ceased to be a subsisting burden on the land. The agreements between the plaintiff and Taylor for the extension of the lease, were, in effect, new leases; and their record, or possession under them, was necessary to give them any validity whatever except as between the parties to them. And, such record or possession was also necessary with respect to the receipt given to the plaintiff by Shoupe after he became the owner of the premises, if that is to be regarded as an agreement by him to extend the terms and conditions of the original lease. As neither of these instruments was of record, nor any one claiming under either in possession of the land when the city of Tiffin took its lease from Shoupe, and as the original lease had then expired, there was no obstacle arising from either, in the way of the city then obtaining a valid lease from Shoupe, superior to the claim asserted here by the plaintiff. Such a lease the city appears to have obtained, and it cannot be deprived of its enjoyment at the suit of the plaintiff."

Under the contract here the specified term was for two years, and while there was a clause in the lease which provided that under certain conditions the lessee might obtain a license for a further time, yet that arrangement would constitute a new contract, or a new license. It was required that the lessee should not only elect to accept that provision, but should notify the lessor, and should promise to pay, and pay a new and increased consideration of one dollar per acre per year, which when done and performed would make a new agreement between the parties and binding between themselves. As between them no record was needed of such an agreement, and no possession was required to be taken by the lessees; but as against the defendant oil company, one of these two things was requisite in order to defeat its right as such subsequent lessee. The record would not show that the lease had been kept alive by the payment of the specified rental, nor was the lessees in possession.

The result is that a decree must be entered for the defendants, and a perpetual injunction is granted against the plaintiffs from interfering with the premises as prayed for.